TEXTO COMPLETO DE LA SENTENCIA
El Sr. Daniel Soto Riestra (recurrente), comparece ante este Tribunal por medio del recurso de revisión judicial de epígrafe. Nos solicita que revoquemos la Resolución emitida por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Junta), el 26 de junio de 2008, notificada el 19 de septiembre de 2008 (Resolución). Mediante la Resolución recurrida, la Junta confirmó la decisión emitida por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Administración), de denegar la solicitud del recurrente para que se le concedieran los beneficios de una pensión por incapacidad ocupacional y no ocupacional.
Examinados los escritos de las partes comparecientes y evaluado el derecho aplicable, resolvemos confirmar la determinación recurrida.
I
De conformidad con el recurso ante nuestra consideración, el recurrente, de 47 años de edad, trabajó para la Autoridad de Acueductos y Alcantarillados (AAA) en calidad de encargado de brigada. El 14 de octubre de 2002, sufrió un accidente laboral y sostuvo trauma cervical, dorsal y lumbar en su espalda, hernia discal L4-15, L5-S1, trauma en el hombro de la extremidad superior derecha y trauma en el muslo, rodilla y pie de la extremidad inferior derecha. Las lesiones le fueron relacionadas al recurrente por la Corporación del Fondo del Seguro del Estado. Además, el recurrente sostiene que padece de depresión mayor, osteoartritis cervical y lumbar, *842 radiculopatía lumbar, síndrome del túnel carpal bilateral y síndrome de salida toráxica bilateral (Bilateral Toraxic Outlet Syndrome) que no le fueron relacionados.
Ocurrido el accidente, el 7 de octubre de 2005, el recurrente solicitó los beneficios de incapacidad por condiciones ocupacionales y no ocupacionales ante la Administración. Hasta ese momento, el recurrente había cotizado quince (15) años de servicio al sistema de retiro.
El 16 de agosto de 2006, la Administración denegó la solicitud de incapacidad ocupacional y no ocupacional del recurrente. En síntesis, concluyó que la prueba presentada no demostró que el recurrente se encontrase total y permanentemente incapacitado para cumplir con los deberes del puesto que en el servicio el patrono le asignase.
El 31 de agosto de 2006, el recurrente presentó un recurso de apelación ante la Junta y solicitó que se revocase la denegatoria de la Administración de su solicitud de incapacidad. La vista administrativa fue celebrada el 29 de enero de 2008, y declaró el propio recurrente. Finalmente, el 26 de junio de 2008, la Junta emitió la Resolución recurrida y confirmó la denegatoria de la Administración de conceder beneficios por incapacidad.
El 9 de octubre de 2009, el recurrente presentó una “Moción Para Solicitar Reconsideración” ante la Junta. La Junta no se expresó en tomo a dicha solicitud por lo que se entiende que la solicitud de reconsideración fue rechazada de plano.
Inconforme, el recurrente aduce que la Junta cometió los siguientes errores:
“1) Erró la Junta al denegar la pensión por incapacidad ocupacional o no ocupacional al interpretar restrictivamente la Ley Núm. 447 del 15 de mayo de 1951, según enmendada, y descartar o no considerar decisiones, evaluaciones o resoluciones obrantes en el expediente, y emitir una decisión evaluando condiciones aisladamente, no hacer ese análisis, y no si el conjunto de dos o más de esas condiciones eran incapacitantes (sic).
2) Las conclusiones de derecho son contrarias a los hechos probados, dejando de incluir hechos esenciales, conforme al expediente.
3) La Junta incurrió en abuso de discreción y arbitrariedad al emitir una decisión administrativa inconsistente con otras previamente emitidas con similares hechos.
4) Erró la Junta al confirmar la decisión sobre denegatoria de pensión por incapacidad ocupacional o no ocupacional que resolvía que el recurrente aún estaba física y mentalmente incapacitado para trabajar (sic), sin considerar factores vocacionales y funcionales, sin que se evaluaran los trabajos que puede desempeñar, y sin tomar en consideración que el recurrente está fuera del servicio por incapacidad disfrutando de pensión por incapacidad del seguro social, y que no trabaja desde antes de octubre 26 de 2005.”
II
A
La función revisora de los tribunales con respecto a las determinaciones de los organismos administrativos es de carácter limitado, pues comprende tres aspectos: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) las conclusiones de derecho del organismo administrativo fueron correctas. Pacheco v. Estancias de Yauco, 160 D.P.R. 409, 431 (2003).
*843 El propósito primordial de la revisión judicial de las decisiones administrativas es demarcar el ámbito de discreción de las agencias administrativas y cerciorarse que éstas ejecuten sus funciones de acuerdo con la ley. L.P.C. & D., Inc. v. A.C., 149 D.P.R. 869, 878 (1999). Por consiguiente, la revisión judicial de decisiones de las agencias administrativas “se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción”. Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993). No obstante, el Tribunal Supremo de Puerto Rico (TSPR) enfatiza que a pesar de la “cautela”, “esa deferencia no significa que hayamos renunciado nuestra función revisora en instancias apropiadas y meritorias”. Fuertes y otros v. A.R.P.E., supra.
El TSPR ha expresado que las decisiones o resoluciones, al igual que las interpretaciones de las agencias u organismos administrativos especializados, merecen la mayor deferencia judicial. Ello es así porque éstos cuentan con experiencia y conocimiento altamente especializado sobre los asuntos que se le encomiendan. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 123 (2000). Las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotar tal presunción. Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987).
En virtud de dicha deferencia, los tribunales no deben alterar las determinaciones de hechos suscritas por las agencias administrativas “si se basan en evidencia sustancial que obra en el expediente administrativo” considerado en su totalidad. See. 4.5. de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. §2175. Véase además, Rivera Concepción v. A.R.P.E., supra. Por lo tanto, aquel que aduzca lo contrario tiene que presentar prueba suficiente que derrote dicha presunción. Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999).
En numerosas ocasiones, el TSPR ha reiterado que evidencia sustancial es “aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 75 (2000). El propósito primordial de la doctrina de la evidencia sustancial es “evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor”. Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 95 (1997). De igual forma, no le corresponde a los tribunales pasar juicio sobre los conflictos de prueba entre opiniones especializadas o científicas. Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908, 940 (1998).
Por otra parte, las conclusiones de derecho emitidas por las agencias administrativas son revisables en su totalidad. See. 4.5 de la LPAU. No obstante, ello no significa que los tribunales, sin razón alguna, puedan rechazar las conclusiones de derecho de las agencias administrativas e impongan su criterio. Otero v. Toyota, 163 D.P.R. 716, 729 (2005). De ordinario, los tribunales conceden gran peso y deferencia a las interpretaciones que dichos organismos realizan de las leyes que les corresponde administrar. Las agencias administrativas, contrario a los tribunales, “cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que se le encomiendan”. Rivera Concepción v. A.R.P.E., supra.
B
La Ley Núm. 447 del 15 de mayo de 1951, según enmendada, 3 L.P.R.A. see. 761 (Ley 447), establece un sistema de retiro y beneficios para los empleados del Gobierno elegibles que aporten a estos programas. Pérez et als. v. Depto. de la Familia, 156 D.P.R. 223, 230 (2002). Entre otros beneficios, el Artículo 2-109 de la Ley 447, según enmendado, 3 L.P.R.A. see. 770, reconoce el derecho a una anualidad por incapacidad no ocupacional a “[t]odo participante que, teniendo por lo menos 10 años de servicios acreditados, se inhabilitare para el servicio, debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado.”
Por su parte, el Artículo 2-107 de la Ley 447, según enmendado, 3 L.P.R.A. see. 769, dispone, en lo *844 pertinente, lo siguiente:
“Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:
(a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.
(b) El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.
(c) El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o sea inherentemente relacionado al trabajo o empleo.”
Además, el Artículo 2-111 de la Ley 447, según enmendado, 3 L.P.R.A. see. 771, establece, en lo pertinente, que:
“Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios que mediante reglamento fíje el Administrador y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado.” (Énfasis suplido.)
Estos criterios médicos se incorporaron en el Reglamento para la Concesión de Pensiones por Incapacidad a lo(a)s Participantes de los Sistemas de Retiro de lo(a)s Empleado(a)s del Gobierno y la Judicatura, Reglamento Núm. 6719 de 5 de noviembre de 2003 (Reglamento). En la Sección 6.1 (J) del Reglamento se establece lo siguiente:
“Para los fines de una anualidad por incapacidad, se considerará incapacitado(a) a un(a) participante cuando la incapacidad esté sustentada con suficiente prueba médica, conforme a los Criterios adoptados por el(Ia) Administradora), y dicha prueba revele que el(la) participante está inhabilitado(a) para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado.”
Por su parte, la Sección 6.2 del Reglamento establece como requisitos para solicitar una pensión por incapacidad ocupacional lo siguiente:
“A. Todo(a) participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado(a) para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional. Para tener derecho a una pensión por incapacidad ocupacional bajo este Artículo, será requisito que el participante:
1) Sea participante activo(a) a la fecha en que ocurre el accidente por el cual solicita una anualidad por incapacidad ocupacional;
2) La Corporación del Fondo del Seguro del Estado (CFSE) determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo, a tenor con lo dispuesto por la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley 45 del 18 de abril de 1935, según enmendada;
*845 3) Radique su solicitud dentro de los ciento ochenta (180) días en que la CFSE emita dicha determinación;
4) Se. reciba la Certificación de Compensabilidad para la Administración (modelo CFSE 0037, Abr. 2002) que emitirá la Corporación del Fondo del Seguro del Estado, sobre el accidente por el cual solicita la incapacidad ocupacional;
5) Se reciba suficiente evidencia médica;
6) Cumpla con la Sección 6.1 de este Reglamento.
B. El(la) Administrador(a) podrá solicitar a la Corporación del Fondo del Seguro del Estado los informes médicos de exámenes practicados al(la) empleado(a) y cualquier otro documento relacionado con el accidente del trabajo que motive la reclamación. El(la) Administrador(a) de la Corporación del Fondo del Seguro del Estado pondrá a su disposición dichos informes.
C. El importe de la anualidad será igual al cincuenta por ciento (50%) del último tipo de salario que hubiese tenido derecho a percibir el(la) participante estando en servicio activo. Para todo(a) nuevo(a) participante, el importe será igual al cuarenta por ciento (40%) del último tipo de salario que hubiese tenido derecho a percibir estando en servicio activo.”
En cuanto a la concesión de pensión por incapacidad no ocupacional, la Sección 6.3 del Reglamento establece los siguientes requisitos para ser acreedor a la misma:
“A. Todo(a) participante que se inhabilitare para el servicio, debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado(a) para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado, tendrá derecho a una anualidad por incapacidad no ocupacional. Para tener derecho a una pensión por incapacidad no ocupacional bajo este Artículo, será requisito que el participante:
1) Se encuentre en servicio activo a la fecha de radicación de la solicitud;
2) Tenga por lo menos diez (10) años de servicios acreditados;
3) Cumpla con la Sección 6.1 de este Reglamento.
B. El importe de la anualidad será el uno y medio por ciento (F/2%) de la retribución promedio, multiplicado por el número de años de servicios acreditados hasta veinte (20) años, más el dos por ciento (2%) de la retribución promedio multiplicado por el número de años de servicio acreditados en exceso de veinte (20) años.”
A su vez, el Artículo 5. (6) del Reglamento define “incapacidad” como “la inhabilidad e imposibilidad del(de la) participante para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado, conforme a los Criterios médicos establecidos por el(la) Admimistrador(a) en el Manual para la Evaluación de Incapacidad de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura.” (Énfasis nuestro.) Además, dispone que la “incapacidad total y permanente” es “cuando la condición médica del (de la) participante es de tal naturaleza, que no se espera recuperación alguna, conforme a los Criterios médicos establecidos por el(la) Administrador(a) en el Manual para la Evaluación de Incapacidad de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura.” Artículo 5. (7) del Reglamento.
El Manual para la Evaluación de Incapacidad de la Administración de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura (Manual) es un apéndice del Reglamento y “contiene los códigos médicos *846 con el grado de severidad y hallazgos médicos requeridos para determinar si existen las condiciones físicas y/o mentales que, por su naturaleza, resultan incapacitantes. Provee, además, las normas aplicadas durante el proceso de evaluación de determinaciones de incapacidad.” Manual, APLICABILIDAD Y PROPÓSITO. En su parte de INFORMACIÓN GENERAL, el Manual establece:
“A. Definición de Incapacidad para la Administración de los Sistemas de Retiro:
Se considerará incapacitado a un participante, cuando la incapacidad esté sustentada con suficiente prueba médica, conforme a los criterios aquí establecidos, que revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado. Dicha imposibilidad deberá durar un período no menor de doce (12) meses.
Se considerará una incapacidad como total y permanente, cuando las condiciones que lo incapacitan sean de tal naturaleza, que no se espere recuperación alguna.
B. Definición de Incapacidad médicamente determinable:
Una incapacidad médicamente determinable es aquella que resulta de alteraciones anatómicas, fisiológicas o sicológicas que puedan ser demostradas por la clínica, estudios y pruebas de laboratorio médicamente aceptables. La evidencia médica debe incluir signos, síntomas y hallazgos de estudios y laboratorios que permitan al Médico Asesor analizar y establecer, de forma fiel y objetiva, el grado de limitación correspondiente.
El diagnóstico, las alegaciones y quejas de síntomas del reclamante, no se consideran como incapacitantes por sí solas.
C. Evidencia médica aceptable:
Se considera evidencia médica aceptable, toda aquella presentada por las fuentes de tratamiento del reclamante, ya sea copia de expedientes médicos, de hospitalizaciones o cuestionarios provistos por la Administración, además de todo estudio, resultado de laboratorio o examen mental concerniente a los diagnósticos, alegaciones y quejas del reclamante.
Las opiniones o decisiones dé incapacidad emitidas por otras fuentes, no obligan a la Administración a otorgar una incapacidad.
D. Proceso de evaluación:
1. Se evaluará la evidencia, según los criterios establecidos en los Códigos Médicos, si:
a. llena los requisitos de los mismos; o
b. si iguala los requisitos. Se entiende por igualar, si:
1. la condición médica tiene el mismo nivel de severidad que se establece en el código, pero se llegó a la misma por pruebas o exámenes médicos equivalentes y no necesariamente a través de los requisitos específicos que exigen el mismo; o
2. si una condición médica no está contemplada en ninguno de los códigos, pero la severidad es similar o comparable a uno ya establecido; o
*847 3. que un impedimento contemplado en un código no esté presente y pueda ser sustituido por otro equivalente y de igual severidad; o
c. por combinación de impedimentos;
1. Cuando las condiciones médicas documentadas, por sí solas, no llenan ni igualan un código en particular, pero al considerarse en conjunto alcanza un grado de severidad incapacitante.
La combinación será por el conjunto de las condiciones físicas, por el conjunto de las condiciones mentales o por combinación de ambas.
2. Si cumple con los requisitos administrativos de la Ley 447 de 15 de mayo de 1951, según enmendada:
a) Se considerará la posibilidad de combinación del Fondo del Seguro del Estado. Si no cualifica, entonces,
b) Se considerará la posibilidad de combinación de condiciones no relacionadas.
c) En el caso de que la combinación de condiciones relacionadas por la Corporación del Fondo del Seguro del Estado y las no relacionadas, resulten incapacitantes, se adjudicará como Incapacidad no Ocupacional.
2. Si se determina que el participante, está incapacitado, se otorgará el beneficio como total o permanente, si no se espera recuperación médica alguna. De no ser así, se otorgará el beneficio con exámenes médicos periódicos.” (Énfasis nuestro.)
A su vez, en la parte de CÓDIGOS MÉDICOS del Manual se dispone lo siguiente:
“La evaluación médica se basará en trece (13) códigos, descritos a continuación. Cada uno incluye una introducción general que contiene la definición de los conceptos claves que se usan en los mismos. También, se incluye en esta introducción, determinados hallazgos médicos específicos; algunos de los cuales son necesarios para establecer un diagnóstico o confirmar la presencia de una condición incapacitante. Si los hallazgos necesarios para sustentar una condición médica, no se encuentran en la introducción, o en cualquier otra parte del código, aún así, ésta tiene que establecerse mediante pruebas diagnósticas clínicas de estudios y laboratorios médicamente aceptables.
Seguido a la introducción, cada código contendrá el grado de severidad y hallazgos médicos requeridos para llenar el mismo. De no llenar la severidad requerida por el código, se podrá considerar la incapacidad por el concepto de igualar o el de combinación de impedimentos, según se establece en la sección de normas y procedimientos de este Manual.
Los códigos están divididos en la siguiente forma:
“LO Sistema Musculoesqueletal
2.0 Sentidos Especiales y Habla
3.0 Sistema Respiratorio
4.0 Sistema Cardiovascular
5.0 Sistema Gastrointestinal
*848 6.0 Sistema Genitourinario
7.0 Sistema Hemático y Linfático
8.0 Piel
9.0 Sistema Endocrino y Obesidad
10.0 Sistema Neurológico
11.0 Trastornos Mentales
12.0 Enfermedades Neoplásticas
12.0 Sistema Inmunológico”.
El TSPR ha establecido que, conforme este esquema, una incapacidad leve que limita las funciones de un empleado, pero no le impide llevar a cabo las funciones de su trabajo o de cualquier otro empleo remunerativo, no da base para recibir una pensión bajo la Ley 447. La incapacidad debe ser de tal naturaleza que le inhabilite para desempeñar las tareas que realizaba en su puesto o las de otro empleo remunerativo comparable. (Énfasis suplido.) Padín v. Retiro, res. el 2 de agosto de 2007, 172 D.P.R._(2007), 2007 J.T.S. 151.
ni
Por estar íntimamente relacionados, discutiremos los señalamientos de error del recurrente de forma conjunta. En síntesis, el recurrente aduce que la apreciación de la prueba realizada por la Junta fue errónea, al evaluar de forma aislada y arbitraria la información habida en el expediente. Añade que la conclusión a la que llegó la Junta no está sostenida por la evidencia del expediente y aduce que erró la Junta al no tomar en cuenta que el recurrente fue pensionado por la Administración del Seguro Social y no trabaja desde el año 2005.
Las disposiciones estatutarias que versan sobre pensiones, como la Ley 447, deben interpretarse liberalmente a favor del beneficiario, a fin de que se cumpla el propósito reparador para las cuales fueron aprobadas. Ahora bien, tanto la Ley 447, como el Reglamento, supra, condicionan la determinación de incapacidad al hecho de que la evidencia médica que obre en el expediente demuestre que están presentes los criterios médicos allí establecidos. Como señalamos antes, de acuerdo a la Ley 447, la incapacidad total y permanente es aquella que le impide al solicitante cumplir con los deberes de cualquier cargo o le impide trabajar en cualquier empleo retribuido. Le corresponde al participante presentar suficiente prueba médica en cuanto a la alegada incapacidad mental o física, conforme a los criterios que mediante reglamento filie el Administrador.
En la situación ante nuestra consideración, el recurrente sugiere que las evaluaciones de su médico de cabecera, su neurólogo y su psiquiatra, demuestran su incapacidad para trabajar en cualquier empleo de forma total y permanente. No obstante, el examen objetivo y despasionado de la totalidad de las evaluaciones médicas, según detalladas en la Resolución recurrida, revela que el recurrente no reúne los criterios de severidad para las condiciones músculo-esqueletales, neurológicas y emocionales que presenta, según requeridas por el Manual.
En cuanto a las condiciones de sistema musculoesqueletal, la evaluación del recurrente arroja que éste no reúne los requisitos de severidad, de acuerdo a los códigos 1.05 (desórdenes de la espina dorsal), 1.11 (fracturas de extremidades inferiores o pelvis), 1.12 (fractura de extremidad superior) y 1.13 (lesiones de tejido blando de extremidad superior o inferior). Sobre el particular, la totalidad de las evaluaciones demostró que el recurrente no padece de una limitación significativa en el movimiento de sus extremidades, puede caminar sin necesidad de *849 apoyo, su tono muscular y su fuerza son adecuados. A pesar de sentir dolor, el recurrente puede pararse en sus talones y en la punta de sus pies; tampoco manifiesta pérdida de las funciones motoras ni espasmo severo en la columna vertebral. Aunque el recurrente sufrió traumas en diferentes partes de su cuerpo, no se estableció que hubiese fracturas sin consolidar o traumas en el tejido blando que requiriesen cirugías múltiples para corregirse.
Por su parte, las condiciones neurológicas que presenta el recurrente tampoco igualan el listado de severidad de las lesiones a la espina dorsal o a una raíz nerviosa (10.08), neuropatías periféricas (10.14) o accidentes cerebro vasculares (10.04). En particular, el recurrente presenta tono y fuerza muscular adecuada, sin atrofias. Aunque presenta disminución sensorial de tacto fino en la extremidad inferior derecha y el reflejo patelar izquierdo disminuido, se concluyó que no tiene pérdida sensorial o motora significativa en cuanto a las funciones de movimiento. El recurrente puede caminar sin apoyo, puede hacer movimientos alternantes rápidos con buena coordinación de las cuatro (4) extremidades. No presenta temblores, puede caminar con un pie frente al otro (“tandem walk”) y con su manos puede hacer oposición del pulgar, cierre de puño y agarre de pinza.
Asimismo, la condición emocional del recurrente tampoco alcanza los niveles de severidad requeridos por los criterios 11.04 (trastornos afectivos) y 11.06 (trastornos relacionados a la ansiedad). La condición de salud mental del Recurrente no cumple con los criterios de la Junta, pues no manifiesta fobias, compulsiones, ideas suicidad, homicidas, trastornos perceptivos, delirio o ideas de referencia. Su pensamiento fue coherente, en contacto con la realidad, orientado en persona y lugar, parcialmente orientado en tiempo. Atención y concentración disminuidas, pero con capacidad de administrar sus bienes. Aunque su memoria reciente e inmediata se presenta disminuida, su memoria remota se presenta conservada y tiene ausencias de hospitalizaciones psiquiátricas.
De lo anterior se desprende que el recurrente no presentó evidencia que probara que la determinación de la agencia fue irrazonable y no basada en evidencia sustancial. El examen objetivo de la Resolución recurrida nos lleva a determinar que la misma está apoyada por prueba sustancial obrante en el expediente. Por consiguiente, declinamos sustituir el criterio de la agencia por el nuestro.
Por otro lado, debemos aclararle al recurrente que el TSPR expresó que el hecho que la Administración utilice el mismo listado de criterios que usa la Administración de Seguro Social no la obliga en las determinaciones sobre incapacidad, sobre todo cuando el Reglamento establece claramente el grado de incapacidad a probarse, que debe ser total y permanente. En específico, el empleado será considerado capaz si no prueba su incapacidad total y permanente. La agencia queda autorizada a determinar, basada en la evidencia sometida, si hay o no incapacidad para la concesión de la pensión. López Echevarría v. Adm. Sist. Retiro, 168 D.P.R. 749, 756 (2006). Es decir, aun cuando el Reglamento hace referencia a los criterios de incapacidad de los reglamentos federales, la determinación de incapacidad al amparo de la Ley Núm. 447, debe limitarse exclusivamente a evaluar si la incapacidad del solicitante es tal que le impide realizar las funciones de su empleo o de cualquier otro trabajo remunerativo. Padín v. Adm. Sist. Retiro, supra.
En vista de todo lo anterior, debemos concluir que no incidió la Junta al resolver que de la totalidad de la prueba médica el recurrente no es acreedor a la pensión solicitada debido a que las condiciones que padece no reúnen los requisitos de severidad de los criterios aplicables. Por lo tanto, resolvemos que la Junta aplicó correctamente el estándar establecido por la Ley 447, a saber: si las condiciones del recurrente lo incapacitaban total y permanentemente para cumplir los deberes de cualquier cargo o empleo retribuido. Las conclusiones de Junta son cónsonas con el propósito de dicha legislación y no son arbitrarias, ilegales o irrazonables, por lo que debemos sostenerlas.
IV
Por los fundamentos expresados, se confirma la Resolución recurrida.
*850 Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones